```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
LUIS F. OCASIO,                                NOT FOR PUBLICATION

                Plaintiff,
                                               SUMMARY ORDER
        v.
                                               18-cv-2472(KAM)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-----------------------------------X
```

**MATSUMOTO, United States District Judge:**

Luis F. Ocasio ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or "Commissioner"), which found that plaintiff was not eligible for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that he is disabled under the Act and is thus entitled to receive the aforementioned benefits.

Presently before the court is defendant's motion for judgment on the pleadings (ECF No. 15) and plaintiff's cross-motion for judgment on the pleadings (ECF. No 16).  For the reasons stated below, plaintiff's motion is GRANTED in part, defendant's motion is DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

I.  **Procedural History**

On August 25, 2015, plaintiff applied for supplemental security income benefits. (ECF No. 1, Complaint ("Compl.") 1; ECF No. 19, Administrative Transcript ("Tr.") 104, 165-173, 195.) Plaintiff claimed that he was disabled as a result of substance abuse and complications of the right leg. (Compl. 1.) His alleged disability onset date was April 1, 1998. (*Id.*)

On November 4, 2015, the Social Security Administration ("SSA") denied plaintiff's application for supplemental security income on the grounds that he was not disabled within the meaning of the Act. (Tr. 111-14.) On December 21, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* 117-19.) On May 18, 2017, plaintiff appeared before ALJ Laura Michaelec Olszewski, but the hearing was adjourned in order to allow the plaintiff to obtain a representative. (*Id.* 66-73.) On August 29, 2017, plaintiff appeared with his representative, Michael Schoffman, Esq., and testified before ALJ Olszewski. (*Id.* 74-102.) Theresa Hopkins, a vocational expert, also appeared at plaintiff's hearing. (*Id.*) By decision dated November 27, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and, therefore, was not entitled to benefits. (*Id.* 12-29.)

2

On November 30, 2017, plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 160-62.) On April 5, 2018, the Appeals Council denied review, thereby rendering the ALJ decision final. (*Id.* 1-5.) On April 24, 2018, plaintiff filed the instant action in federal court. (*See generally* Compl.)

## II.  Plaintiff's Subpoena Request

The parties filed a Joint Stipulation of Relevant Facts on March 29, 2019, which the court incorporates by reference. (ECF No. 18.) The court only references those additional facts relevant to the ALJ's decision and the pertinent medical opinion evidence.

Plaintiff appeared for his first scheduled hearing on May 18, 2017, before ALJ Laura Michaelec Olszewski, but the hearing was adjourned in order to allow plaintiff to obtain representation. (Tr. 66-73.) The same day, a Psychiatric Functional Assessment form, signed by Korczak Zbignew, LCSW, and Mark Rybakov, DO of St. Mark's Place Institute for Mental Health, was entered as an exhibit into plaintiff's file.[1] (*Id.* 395-400.) The record indicates that attorney Michael Schoffman was retained by plaintiff on July 12, 2017, and entered an appearance in the case on that date. (*Id.* 152-53.) On August

---

[1]   Psychiatrist Mark Rybakov, M.D., the plaintiff's treating psychiatrist, is affiliated and practices medicine with St. Mark's Place Institute for Mental Health, according to www.webmd.com.

3

24, 2017, Mr. Schoffman advised the ALJ by letter that he had not been able to obtain the medical records of St. Mark's Place Institute for Mental Health. (*Id.* 263.) Mr. Schoffman requested that the ALJ issue a subpoena for the records. On August 29, 2017, Plaintiff appeared at his second hearing with Mr. Schoffman, and testified before ALJ Olszewski. (*Id.* 74-102.)

The record is devoid of further discussion regarding Mr. Schoffman's request to subpoena the records of St. Mark's Place Institute and Dr. Rybakov. Nowhere does the transcript indicate that a subpoena was issued by ALJ Olszewski. Nor does her decision mention Mr. Schoffman's subpoena request. In sum, the court cannot discern why the ALJ declined to issue a subpoena and deny Mr. Schoffman's request. (*See generally* Tr. 12-29.) The oral transcript for the hearing, which took place on August 29, 2017, likewise offers no clues as to the fate of Mr. Schoffman's subpoena request. (*Id.* 74-102.) Notably, the Exhibit List attached to the ALJ decision indicates that no such records were introduced into the record, or that the ALJ issued a subpoena. (*Id.* 28.)

III. **Medical Opinion of Treating Psychiatrist Mark Rybakov, MD**

On May 18, 2017, a "Psychiatric Functional Assessment" form was scanned into the plaintiff's file by SSA staff, and listed as Exhibit 8F. (Tr. 395-400.) The form was signed by

4

both Korczak Zbignew, LCSW and Mark Rybakov, DO.  (*Id.* 400.) Dr. Rybakov stated that plaintiff had been seeing him once a week, for more than a year, beginning on May 5, 2016. (*Id.* 395.) Dr. Rybakov diagnosed plaintiff with major depressive disorder, opioid dependence in remission, and chronic post-traumatic stress disorder (PTSD).  (*Id.*)  Dr. Rybakov further noted that plaintiff had a history of childhood sexual abuse that contributed to his depressive disorder and PTSD, with loss of interest and pleasure in activities, guilt, and loneliness. (*Id.*)  He also reported that plaintiff had engaged in individual therapy with cognitive behavioral techniques and mindfulness once a week, and psychopharmacotherapy, and took Celexa and trazodone.  (*Id.*)  Plaintiff did not report any side effects to the medication, and none were observed.  (*Id.*)

Dr. Rybakov opined that plaintiff's prognosis was poor to moderate. (Tr. 395.)  Plaintiff exhibited depressed mood, diminished interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, difficulty concentrating or thinking, and detachment from social relationships.  (*Id.* 398.)  He further indicated that he had subsequent involuntary re-experiencing of a traumatic event, disturbance in mood and behavior, and increases in arousal and reactivity.  (*Id.*)

5

Dr. Rybakov noted that plaintiff had an extreme limitation or inability to function with respect to: remembering location and work-like procedures; sequencing multi-step activities; and problems with memory, periods of confusion, and visual hallucinations.  (Tr. 396.)  According to Dr. Rybakov, plaintiff had a marked or serious limitation concerning: using reason and judgment to make work-related decisions; understanding and remembering short and simple instructions; and carrying out very short and simple oral instructions of one to two steps.  (*Id.* 396.)  Dr. Rybakov also documented plaintiff's moderate limitations, including answering questions and providing explanations; recognizing a limitation; understanding and learning terms, instructions, and procedures; describing a work activity to someone else; and asking simple questions or requesting assistance.  (*Id.*)

Dr. Rybakov opined that, in the context of plaintiff's social interactions, he had a mild limitation stating his own point of view when interacting with others and keeping social interactions free of excessive irritability.  (Tr. 397.)  As for marked or serious limitations, Dr. Rybakov noted that plaintiff had difficulties getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; understanding or responding to social cues; responding appropriately to requests, suggestions, and criticisms from co-

6

workers or supervisors; and initiating or sustaining conversation. (*Id.*) Plaintiff also had an extreme limitation cooperating and handling conflict with others. (*Id.*) Dr. Rybakov opined generally that plaintiff was extremely limited in all areas of concentration, persistence, or maintaining pace. (*Id.*)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a reasonable mind would accept as

7

adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Sec. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or

engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find that claimant is not disabled under the Act.

9

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## DISCUSSION

**I.   The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since August 25, 2015, the application date. (Tr. 17.) At step two, the ALJ found that the plaintiff suffered from the severe impairments of

10

depression, anxiety, and substance abuse disorder. (*Id.*) The ALJ considered the plaintiff's conditions of degenerative disc disease, osteoarthritis, obesity, diabetes mellitis, hyperlipidemia, and plantar fascitis, but found them to be non-severe. (*Id.* 17-18.)

At step three, the ALJ determined that, from August 25, 2017 through the date of the hearing, the plaintiff did not have an impairment or combination that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, App'x 1 (20 C.F.R. §§ 416.920(d) and 416.926), although the ALJ did consider Listings 12.04, 12.06, and 12.15. (Tr. 18-20.) The ALJ found that, as of the hearing date, plaintiff was capable of performing work at all exertional levels but with non-exertional limitations, namely, a "low stress environment defined as occasional use of judgment, occasional decision-making and occasional changes in a work setting." (*Id.* 20.) The ALJ added that plaintiff should be limited "to simple, routine and repetitive tasks," and stated that he "should not work at a production pace." (*Id.*)

The ALJ arrived at this RFC, in part, by assigning "limited weight" to the opinion of Dr. Rybakov, which the ALJ found "inconsistent with the record as a whole and not supported by relevant evidence". (Tr. 22.) The plaintiff argues that the ALJ erred in failing to fully develop the record and in not

11

giving weight to the opinion of Dr. Rybakov. (*See* ECF No. 15-1, Pl.'s Mem. 3-4.) The court agrees. The ALJ failed to develop the record and was not able to properly weigh the medical opinion of Dr. Rybakov on the basis of an incomplete medical record.

## II.  Failure to Develop Record

As noted above, the ALJ made no mention of plaintiff's request to subpoena Dr. Rybakov's records in her decision, nor did she make any mention of the request at the hearing. Moreover, the record does not indicate that the ALJ issued the subpoena.

According to SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(b). Furthermore, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty . . . exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (internal citations and quotations omitted, brackets in original).

Thus, if the claimant's medical record is inadequate, it is "the ALJ's duty to seek additional information from [the treating physician] *sua sponte."* *Schaal,* 134 F.3d at 505; *see*

12

*Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.").

Recently promulgated regulations impose a duty on each party to timely advise the SSA of outstanding treatment sources. *See, e.g.,* 20 CFR §§ 404.935, 416.1435. Specifically, a plaintiff must make "every effort" to inform the SSA about evidence or submit evidence no later than five business days before the hearing. *Id.* In adopting the five-day rule, the SSA specifically sought to "appropriately balance the twin concerns of fairness and efficiency." *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016). The SSA contemplated that the rule would "ensure claimants have the benefit of a fully developed record at the time our ALJs conduct their hearings." *Id.*

Here, plaintiff advised the ALJ on Thursday, August 24, 2017 of outstanding records at St. Mark's Place Institute, less than five business days before the scheduled August 29, 2017 hearing. Though, at first blush, plaintiff appears to have run afoul of the five-day rule, the regulations contain an exception whereby the ALJ must accept otherwise untimely submissions of evidence that were "actively and diligently

13

sought . . . from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 404.935.

Plaintiff adequately gave notice to the ALJ that there was outstanding medical evidence when he filed his letter advising the ALJ that the medical records from St. Mark's Place Institute were outstanding and requesting assistance in obtaining them. Plaintiff only retained his counsel six weeks prior to the date of the hearing, when Mr. Schoffman filed his request for subpoena, and he advised the ALJ that he had already requested the medical records and been promised them. Thus, plaintiff acted with due diligence under the circumstances, and complied with the five-day rule.

More importantly, even if the plaintiff's attorney had not requested assistance in obtaining the records underlying Dr. Rybakov's psychological assessment and advised the ALJ of their existence, the ALJ was aware or should already have been aware that the medical records were outstanding, and therefore should have requested the records. A plaintiff is not required to obtain records but only to notify the ALJ of their existence: "Rather, the claimant 'must make every effort ***to ensure that the administrative law judge receives*** all of the evidence,'" which a claimant can do "by informing the ALJ about or submitting the evidence to the ALJ" no later than five business days before the

14

scheduled hearing. *Drogo v. Comm'r of Soc. Sec.*, No. 6:18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019) (emphasis in original, citation omitted). Once a plaintiff notifies the ALJ about the outstanding records, "the ALJ cannot decline to 'obtain' them." *Id.* On May 18, 2017, the first hearing date, plaintiff made the ALJ aware of his treatment with Dr. Rybakov by providing the ALJ with Dr. Rybakov's opinion statement. In addition, prior to plaintiff's retention of counsel, Dr. Rybakov's opinion had already been entered as an exhibit in the file and the opinion itself indicated that the plaintiff had been treated on a weekly basis for over a year. As plaintiff was still proceeding *pro se*, the ALJ was made aware of relevant outstanding evidence of ongoing treatment, and accordingly, was obligated to request those treatment records.

In addition, the fact that Dr. Rybakov had been treating plaintiff weekly for over one year, and had concluded that plaintiff suffered from a host of psychological conditions, including major depressive disorder, opioid dependence in remission, and PTSD, should have prompted the ALJ to infer the existence of additional medical records underlying Dr. Rybakov's brief four-page assessment. *Candelaria o/b/o J.L.G.L. v. Saul*, a case decided last year in the Western District of New York, is on-point. No. 18-CV-557, 2019 WL 4140937, at *6 (W.D.N.Y. Aug. 30, 2019). The court stated that:

15

> Here, the ALJ found that the medical evidence before him was insufficient to "indicate that [the claimant's aneurysm] is expected to last more than 12 months" and that the aneurysm therefore was non-severe. But a treatment note, to which the ALJ referred in his decision, indicated the claimant's "[h]istory of [arteriovenous] malformation," and that "the claimant was scheduled for an embolization procedure in early August 2017." The results of that test, were among the evidence the ALJ excluded. In other words, evidence *in the record* indicated that there was *other evidence* that might be relevant to the ALJ's conclusion. In light of that reference in the record, and given the ALJ's duty to develop the record, the ALJ erred in refusing to consider the evidence that the attorney had requested but not yet received by the hearing date.

*Id.* (emphasis in original, record citations omitted). Here, the ALJ was alerted to additional records at the time of the first hearing, and, in accordance with her duty to develop the record, was required to consider the records of St. Mark's Place Institute that plaintiff's attorney had requested but not yet received by the date of the second hearing.

The records requested by plaintiff's attorney were clearly relevant. The ALJ assigned little weight to Dr. Rybakov's opinion in her decision because, in part, "it was not supported by relevant evidence." (Tr. 22.) But Dr. Rybakov's opinion indicates that treatment notes exist for about fifty separate visits over the course of more than a year of treatment. (*Id.* 395, 22.) The ALJ erred by taking no action to obtain those records and, instead, citing their absence as a basis to discredit Dr. Rybakov's opinions.

16

Accordingly, the court remands this case with the direction that the additional records be obtained and considered.

### III. Failure to Properly Weigh Medical Evidence

It is reversible error for an ALJ to determine the weight of a medical opinion where the treatment records underlying the opinion have not been obtained. "The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw,* 221 F.3d at 131. "Needless to say, the ALJ cannot assess the amount of medical evidence supporting a treating physician's opinion on an incomplete record." *Tirrell v. Berryhill*, No. 15-CV-518 (KAM), 2018 WL 2048879, at *17 (E.D.N.Y. May 1, 2018). Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess,* 537 F.3d at 129 (quoting *Rosa,* 168 F.3d at 79). "[W]here . . . an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard." *Rivas v. Barnhart,* No. 01 Civ. 3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005). Moreover, "[a]n ALJ's affirmative obligation to develop

17

the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity." *Tirado v. Astrue,* No. 10-CV-2482 (ARR), 2012 WL 259914, at *4 (E.D.N.Y. Jan. 25, 2012) (citing *LoRusso v. Astrue*, No. 08-CV-3467 (RJD), 2010 WL 1292300, at *7 (E.D.N.Y. March 31, 2010)).

At bottom, the opinion of Dr. Rybakov could not be properly weighed in the absence of his underlying treatment records, and the ALJ erred in finding that Dr. Rybakov's opinions were entitled to limited weight. Dr. Rybakov made his findings on the basis of more than fifty visits by plaintiff, but the underlying treatment notes were never entered into the record, and were unavailable for review. Because the court remands on this basis, the court will not address the plaintiff's remaining arguments as to the weight assigned to the medical opinions. On remand, the ALJ will be required to obtain and consider the complete record as a whole, and as she considers the consistency of Dr. Rybakov's opinions with those of other sources, it is possible that the weight assigned to other medical opinions may change.

## **CONCLUSION**

For the reasons stated above, plaintiff's cross-motion for judgment on the pleadings is GRANTED in part, and defendant's motion for judgment on the pleadings is DENIED in

its entirety. The court remands this action for further proceedings consistent with this Memorandum and Order. Specifically, the ALJ shall develop the record by obtaining the treatment notes underlying Dr. Rybakov's psychological assessment of the plaintiff, and shall assign the appropriate weight to Dr. Rybakov's opinion in light of plaintiff's underlying treatment records, and in context of the full record.

**SO ORDERED.**

Dated:    Brooklyn, New York
           April 25, 2020

                                            /s/
                                Hon. Kiyo A. Matsumoto
                                United States District Judge